UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

---

| | |
|---|---|
| SHIVA STEIN, <br> BROOKLYN, NEW YORK 11231, <br><br> Plaintiff, <br><br> v. <br><br> MUTUALFIRST FINANCIAL, INC., <br> 110 E. Charles Street, <br> Muncie, Indiana 47305 <br><br> MICHELLE A. ALTOBELLA, <br> 110 E. Charles Street, <br> Muncie, Indiana 47305 <br><br> MARK L. BARKLEY, <br> 110 E. Charles Street, <br> Muncie, Indiana 47305 <br><br> JAMES M. BERNARD, <br> 110 E. Charles Street, <br> Muncie, Indiana 47305 <br><br> LINN A. CRULL, <br> 110 E. Charles Street, <br> Muncie, Indiana 47305 <br><br> DAVID W. HEETER, <br> 110 E. Charles Street, <br> Muncie, Indiana 47305 <br><br> BRIAN C. HEWITT, <br> 110 E. Charles Street, <br> Muncie, Indiana 47305 <br><br> WILLIAM V. HUGHES, <br> 110 E. Charles Street, <br> Muncie, Indiana 47305 <br><br> RICHARD J. LASHLEY, <br> 110 E. Charles Street, <br> Muncie, Indiana 47305 | Civil Action No. _____ <br><br> **COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** <br><br> **JURY TRIAL DEMANDED** |

|  |  |
|---|---|
| EDWARD C. LEVY,<br>110 E. Charles Street,<br>Muncie, Indiana 47305 | :<br>:<br>:<br>: |
| MICHAEL J. MARIEN<br>110 E. Charles Street,<br>Muncie, Indiana 47305 | :<br>:<br>:<br>: |
| -AND- | :<br>: |
| CHARLES J. VIATER,<br>110 E. Charles Street,<br>Muncie, Indiana 47305 | :<br>:<br>:<br>: |
| Defendants. | : |

----------------------------------------------------------

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.   This is an action brought by Plaintiff against MutualFirst Financial, Inc. ("MutualFirst or the "Company"), and the members MutualFirst's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between MutualFirst and Northwest Bancshares, Inc. ("Northwest").

2.   Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on December 20, 2019 with the United States Securities

and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby MutualFirst will merge with and into Northwest, with Northwest continuing as the surviving company (the "Proposed Transaction"). Pursuant to the terms of the Agreement and Plan of Merger, the companies entered into (the "Merger Agreement") each outstanding MutualFirst common share of beneficial interest will be converted into the right to receive 2.4 shares of Northwest common stock (the "Merger Consideration").

3. As discussed below, Defendants have asked MutualFirst's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction. The financial projections were also utilized by the financial advisor of the Company, Keefe, Bruyette & Woods, Inc. ("KBW") in conducting the valuation analyses in support of its fairness opinion. The Registration Statement also omits or misrepresents information regarding the financial analyses conducted by KBW.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to MutualFirst's stockholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant MutualFirst is incorporated in Maryland, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because MutualFirst in incorporated in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of MutualFirst common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Wilbur R. Davis is the Company's Chairman and has served as a director of the Company since 1991.

11. Individual Defendant Michelle A. Altobella has served as a member of the Board since 2018.

12. Individual Defendant Mark L. Barkley has served as a member of the Board since 2018.

13. Individual Defendant James M. Bernard has served as a member of the Board since 2018.

4

14. Individual Defendant Linn A. Crull has served as a member of the Board since 1997.

15. Individual Defendant David W. Heeter has served as President since 2003, and member of the Board since 2013.

16. Individual Defendant Brian C. Hewitt has served as a member of the Board since 2018.

17. Individual Defendant William V. Hughes has served as a member of the Board since 1999.

18. Individual Defendant Richard J. Lashley has served as a member of the Board since 2017.

19. Individual Defendant Edward C. Levy has served as a member of the Board since 2005.

20. Individual Defendant Michael J. Marien has served as a member of the Board since 1987.

21. Individual Defendant Charles J. Viater has served as a member of the Board since 1995.

22. Defendant MutualFirst is incorporated in Maryland and maintains its principal offices at 110 E. Charles Street, Muncie, Indiana 47305. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "MFSF."

23. The defendants identified in paragraphs 10-21 are collectively referred to as the "Individual Defendants" or the "Board."

24. The defendants identified in paragraphs 10-22 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.    The Proposed Transaction**

25.     MutualFirst operates as the bank holding company for MutualBank that provides various financial services in the United States. It accepts savings deposit, NOW, and demand accounts, as well as certificates of deposit. The company offers one-to-four family residential property, commercial real estate, construction and development, and commercial business loans; consumer loans, such as auto loans, boat and recreational vehicle loans, loans secured by savings deposits, and credit card and unsecured consumer loans; and adjustable rate loans. In addition, it operates as an insurance agent; and sells life and other insurance products. Further, the company provides trust, investment, broker advisory, retirement plan, and private banking products and services. It has 39 full service retail financial centers in Allen, Delaware, Elkhart, Grant, Greene, Hamilton, Jackson, Johnson, Knox, Kosciusko, Lawrence, Monroe, Randolph, St. Joseph, and Wabash counties in Indiana; wealth management offices in Fishers and Crawfordsville, Indiana; and 1 loan origination office in New Buffalo, Michigan. The Company was founded in 1889 and is headquartered in Muncie, Indiana.

26.     On October 29, 2019, the Company and Northwest jointly announced the Proposed Transaction:

> WARREN, Pa. and MUNCIE, Ind., Oct. 29, 2019 /PRNewswire/ -- Northwest Bancshares, Inc., ("Northwest"), (NASDAQ: NWBI) and MutualFirst Financial, Inc., ("MutualFirst") (NASDAQ: MFSF) jointly announced the signing of a definitive merger agreement pursuant to which Northwest will acquire MutualFirst, the Muncie, Indiana-based holding company and parent of MutualBank, in an all-stock transaction valued at $39.89 per share (based on Northwest's 15-day volume weighted average closing stock price ending on October 23, 2019), or approximately $346 million in the aggregate.
>
> The transaction is immediately accretive to Northwest's earnings per share, excluding merger costs, and increases its stand-alone

earnings per share by over 10% on a run-rate basis. Further, it gives Northwest access to an attractive new region of prospective customers. The acquisition provides Northwest with an additional $2.1 billion in total assets, $1.6 billion in total deposits, $1.5 billion in loans and 39 banking locations, based upon financial information as of September 30, 2019.

David W. Heeter, President and Chief Executive Officer of MutualFirst, will be named Regional CEO and market leader for Northwest's Indiana franchise after the merger is consummated and will report directly to Ronald J. Seiffert, President and Chief Executive Officer of Northwest. Mr. Heeter commented, "During our proud 130 year history, MutualBank has been committed to serving our clients and local communities. Through a consistent level of superior quality service, our dedicated staff has grown a loyal commercial and retail customer base. We are very excited about joining the Northwest team. Northwest has demonstrated a similar commitment to its clients, employees and the communities it serves, shares our core values and has an outstanding record of enhancing shareholder value."

In addition to Mr. Heeter, leadership continuity will be preserved with Christopher L. Caldwell, Senior Vice President of commercial banking at MutualBank, leading the commercial lending team in the Indiana market for Northwest and Christopher D. Cook, current Chief Financial Officer of MutualFirst, transitioning to Chief Operations Officer in the Indiana market.

Mr. Seiffert stated, "Indiana is an attractive market with a business friendly environment which we have targeted as part of our Mid-Atlantic and Midwest expansion plans. MutualFirst represents a unique and sizable opportunity that is highly accretive to both Northwest's franchise value and shareholder value. Maintaining MutualFirst's executive management team and the presence of similar cultures allows us to consistently serve the customer base with little to no disruption. We believe MutualBank's customers and employees will embrace Northwest's culture and values and appreciate the additional products and services of a larger community bank which should also create additional growth potential. Northwest will maintain a robust capital position following the merger, giving the combined company significant capital to pursue future acquisitions, pay attractive dividends and continue to grow organically, all of which enhance shareholder value."

Under the terms of the merger agreement, which has been approved unanimously by the boards of directors of both companies, shareholders of MutualFirst will be entitled to receive 2.4 shares of Northwest common stock for each common share of MutualFirst. The exchange ratio is fixed and the transaction is expected to qualify as a tax-free exchange for shareholders of MutualFirst. Based on Northwest's 15-day volume weighted average closing stock price ending on October 23, 2019, the deal is valued at $346 million, or $39.89 per share, which equates to a price to tangible book value ratio of 172% and a price to earnings ratio, after considering fully phased-in cost savings, of under 10x based on consensus estimates for MutualFirst's 2020 EPS of $2.56 and cost savings of approximately 30%. The tangible book value dilution, including all restructuring costs, of approximately $0.33, or 3.5%, is expected to be earned back in approximately 2.8 years when including the impact of CECL and approximately 2.1 years excluding the impact of CECL.

As part of the merger, one MutualFirst director will be added to Northwest's bank and holding company boards. All of the directors and certain executive officers of MutualFirst have entered into voting agreements with Northwest pursuant to which they have agreed to vote their shares in favor of the transaction.

The merger is expected to be consummated and converted to Northwest in the second quarter of 2020, after satisfaction of customary closing conditions, including regulatory approvals and the approval of the shareholders of MutualFirst.

When the transaction is completed, the combination of the two banking companies will create a bank with approximately $12.7 billion in total assets and $10.3 billion in deposits, providing banking services through 221 branch locations in four states.

B. Riley FBR, Inc. is serving as financial advisor and Luse Gorman, PC is serving as legal counsel to Northwest in this transaction.

Keefe, Bruyette & Woods, A Stifel Company is serving as financial adviser and Silver, Freedman, Taff & Tiernan LLP is serving as legal counsel to MutualFirst.

* * *

27.     The Board has unanimously agreed to Proposed Transaction. It is therefore imperative that MutualFirst's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Registration Statement**

28.     On December 20, 2019, MutualFirst and Northwest jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

29.     With respect to the financial projections disclosed in the Registration Statement, the Registration Statement fails to provide any meaningful prospective financial information for both MutualFirst and Northwest, including net earnings through 2025, a metric utilized for KBW's *Discounted Cash Flow Analysis*, and the Company's and Northwest's estimated excess cash flows over the period from March 31, 2020 through December 31, 2024, and all line items used to calculate these metrics.

30.     With respect to KBW's *MutualFirst Financial Selected Companies Analysis*, the Registration Statement fails to disclose the multiples and financial metrics for the companies observed by KBW in its analysis.

9

31. With respect to KBW's *Northwest Bancshares Selected Companies Analysis – Regional Peers*, the Registration Statement fails to disclose the multiples and financial metrics for the companies observed by KBW in its analysis.

32. With respect to KBW's *Northwest Bancshares Selected Companies Analysis – High Dividend Payout Peers*, the Registration Statement fails to disclose the multiples and financial metrics for the companies observed by KBW in its analysis.

33. With respect to KBW's *Selected Transactions Analysis*, the Registration Statement fails to disclose the multiples and financial metrics for the transactions observed by KBW in its analysis.

34. With respect to KBW's *Financial Impact Analysis*, the Registration Statement fails to disclose: (i) the closing balance sheet estimates as of March 31, 2020 for Northwest; (ii) the consensus "street estimates" for MutualFirst; (iii) assumed long-term EPS growth rate for Northwest provided by Northwest management; (iv) assumed long-term EPS growth rate for MutualFirst provided by MutualFirst management; and (v) the pro forma assumptions, including the cost savings and related expenses expected to result from the Proposed Transaction and accounting adjustments assumed with respect thereto.

35. With respect to KBW's *MutualFirst Financial Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) assumed long-term growth rates for MutualFirst provided by MutualFirst management; (ii) the basis for selecting the discount rate range from 8.0% to 12.0; (iii) the present value of the estimated excess cash flows that MutualFirst could generate over the period from March 31, 2020 through December 31, 2024 as a standalone company; (iv) the present value of MutualFirst's implied terminal value at the end of such period; (v) basis for assuming a tangible common equity to tangible asset ratio of 8.00%; (vi) the

basis for a range of 10.0x to 14.0x MutualFirst's estimated 2025 earnings; and (vii) MutualFirst's estimated 2025 earnings.

36. With respect to KBW's *Northwest Bancshares Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) assumed long-term growth rates for Northwest provided by Northwest management; (ii) the basis for selecting the discount rate range from 7.0% to 11.0; (iii) the present value of the estimated excess cash flows that Northwest could generate over the period from March 31, 2020 through December 31, 2024 as a standalone company, (iv) the present value of Northwest's implied terminal value at the end of such period; (v) basis for assuming a tangible common equity to tangible asset ratio of 8.00%; (vi) the basis for a range of 12.0x to 16.0x Northwest Bancshares' estimated 2025 earnings; and (vii) Northwest's estimated 2025 earnings.

37. With respect to KBW's *Pro Forma Combined Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the same information used to perform the discounted cash flow analyses of MutualFirst and Northwest.

38. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

42. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

43. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders

containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

44. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of MutualFirst within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of MutualFirst, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of MutualFirst, including the

content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of MutualFirst, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

49. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9,

by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 23, 2019                    By:   **GOLDMAN & MINTON, P.C.**

|  |  |
|---|---|
| **OF COUNSEL:**<br><br>**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**<br>Gloria Kui Melwani<br>270 Madison Avenue<br>New York, NY 10016<br>Telephone: (212) 545-4600<br>Facsimile: (212) 686-0114<br>Email: melwani@whafh.com | */s/ Thomas J. Minton*<br>Thomas J. Minton (Bar No. 03370)<br>3600 Clipper Mill Road, Suite 201<br>Baltimore, MD 21211<br>Telephone: (410) 783-7575<br>Email: tminton@charmcitylegal.com<br><br>*Attorneys for Plaintiff* |